# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 21, 2021       Decided August 12, 2022

No. 20-5378

TELEMATCH, INC.,
APPELLANT

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02372)

---

*Anand V. Ramana* argued the cause and filed the briefs for appellant.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: WILKINS, KATSAS, and JACKSON,[*] *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

---

[*] Circuit Judge, now Justice, Jackson was a member of the panel at the time the case was argued but did not participate in the opinion.

KATSAS, *Circuit Judge*:  To administer its farm subsidy programs, the United States Department of Agriculture assigns numbers to plots of enrolled farmland and to their owners.  The question presented is whether the Freedom of Information Act requires USDA to disclose these numbers.

I

A

FOIA requires federal agencies to disclose requested records unless one of nine exemptions applies.  5 U.S.C. § 552(a)(3), (b).  Exemption 3 allows an agency to withhold records "specifically exempted from disclosure" by a statute that either "requires that the matters be withheld from the public" or "refers to particular types of matters to be withheld."  *Id.* § 552(b)(3)(A)(i).  Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *Id.* § 552(b)(6).

B

USDA administers various programs offering financial assistance for farming.  When a farm enrolls in such a program, USDA digitally draws its boundaries on a map or aerial photo.  USDA then assigns either a farm number or tract number to the figure so drawn.  Farm numbers refer to an entire farm, and tract numbers refer to a contiguous plot within a farm.  USDA also assigns a customer number to each farm owner participating in one of its programs.  In its records, USDA uses these numbers to track various information associated with the tracts and owners, such as the kind of crops planted or the land transactions of the owner.

3

C

In 2005, Multi Ag Media LLC, a commercial vendor of agricultural data, submitted a FOIA request for USDA records containing farm and tract numbers. We held that Exemption 6 did not cover those records. *Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008). We acknowledged that the records were similar to personnel or medical files and that their release would impair a privacy interest by making it possible to learn of the financial condition of individual farmers. *Id.* at 1228–30. But we also found a significant public interest in disclosure, which would allow the public to "more easily determine whether USDA is catching cheaters and lawfully administering its subsidy and benefit programs." *Id.* at 1232. We thus concluded that release of the farm and tract numbers "would not constitute a clearly unwarranted invasion of personal privacy." *Id.* at 1233 (cleaned up).

Judge Sentelle dissented. He argued that other available information made it possible to monitor program compliance, so disclosure of farm and tract numbers "would merely reveal information about private citizens, without shedding any light on the government's activities." *Multi Ag*, 515 F.3d at 1234 (Sentelle, J., dissenting) (cleaned up). Likewise, he concluded that the majority had overly discounted farmers' privacy interests. *Id.*

Congress responded to *Multi Ag* in the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 1619, 122 Stat. 923, 1022–23. It provides that USDA "shall not disclose":

> (A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation

4

practices, or the land itself, in order to participate in programs of the Department; or

(B) geospatial information otherwise maintained by the Secretary [of Agriculture] about agricultural land or operations for which information described in subparagraph (A) is provided.

7 U.S.C. § 8791(b)(2).

This prohibition on disclosure has four exceptions. USDA may disclose information to assist other government agencies. *Id.* § 8791(b)(3)(A). It may disclose certain "payment information (including payment information and the names and addresses of recipients of payments)." *Id.* § 8791(b)(4)(A). It may disclose information that "has been transformed into a statistical or aggregate form without naming any … individual owner, operator, or producer." *Id.* § 8791(b)(4)(B). And it may disclose information with consent of the relevant owner or producer. *Id.* § 8791(b)(4)(C).

D

Like Multi Ag Media, Telematch, Inc. is a commercial vendor of agricultural data. In 2018 and 2019, it submitted to USDA seven FOIA requests for records containing farm numbers, tract numbers, and customer numbers. USDA withheld the numbers under Exemptions 3 and 6. But it released or offered to release a statistical version of the files in accordance with section 8791(b)(4)(B). It also released payment information for the 2018 Conservation Reserve Program pursuant to section 8791(b)(4)(A).

Telematch sued to challenge USDA's withholding of the farm, tract, and customer numbers. Both parties moved for summary judgment and attached statements of material facts to

their motions. Telematch did not file a statement of genuine issues controverting any of the government's asserted material facts, which the district court then took as admitted. *Telematch, Inc. v. USDA*, No. CV 19-2372 (TJK), 2020 WL 7014206, at \*4 (D.D.C. Nov. 27, 2020). Telematch does not challenge this ruling on appeal.

The district court granted the government's motion for summary judgment. The court held that USDA properly withheld the farm and tract numbers under Exemption 3, because the numbers are "geospatial information" covered by section 8791(b)(2)(B). *Telematch*, 2020 WL 7014206, at \*4–6. The court further held that USDA properly withheld the customer numbers under Exemption 6. It ruled that the numbers apply to individual farmers and so count as "similar files." *Id.* at \*7. Accepting USDA's statement of material facts, the court concluded that their disclosure would impair a substantial privacy interest while advancing no countervailing public interest. *Id.* at \*8–10.

Telematch appealed. We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*. *PETA v. HHS*, 901 F.3d 343, 349 (D.C. Cir. 2018).

II

We begin with the farm and tract numbers. Exemption 3 applies to records "specifically exempted from disclosure" by a statute that "requires that the matters be withheld." 5 U.S.C. § 552(b)(3). To withhold records under Exemption 3, an agency must show that "the statute is one of exemption" and that "the withheld material falls within the statute." *Corley v. DOJ*, 998 F.3d 981, 984–85 (D.C. Cir. 2021) (cleaned up).

6

A

The parties agree that 7 U.S.C. § 8791(b)(2)(B) requires USDA to withhold "geospatial information," but Telematch contends that farm and tract numbers are not covered by that term. The district court held that the numbers are geospatial information because they are "information referring to a specific physical location on Earth." *Telematch*, 2020 WL 7014206, at *6. Telematch objects that "geospatial information" means "geographic information, or other information about the characteristics of the land, that is either expressly overlayed on, or combined with, an accompanying graphic image (*e.g.*, map, aerial photograph, or digitized image)." Appellant Br. at 25 (cleaned up). Section 8791 does not define "geospatial information," so we interpret the phrase in line with its ordinary meaning. *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1537 (2021).

Dictionary definitions of the word "geospatial" support the district court's conclusion that geospatial information includes all information referring to a specific location on earth. *See Geospatial*, *Cambridge Business English Dictionary* (2011) ("relating to information that identifies where particular features are on the earth's surface, such as oceans and mountains"); *Geospatial*, *Collins English Dictionary* (12th ed. 2014) ("of or relating to the relative position of things on the earth's surface"); *Geospatial*, *New Oxford American Dictionary* (3d ed. 2010) ("relating to or denoting data that is associated with a particular location"); *Geospatial*, *Oxford English Dictionary* (3d ed. 2012) ("of or relating to geographical distribution or location").

Definitions of the phrase "geospatial information" reinforce this conclusion. In 2008, the Federal Geography Data Committee, an interagency committee established by the

Office of Management and Budget, defined the term as "Information concerning phenomena implicitly or explicitly associated with a location relative to the Earth's surface." FGDC, *Lexicon of Geospatial Terminology* (Dec. 2008), https://perma.cc/HW3Z-QPU5. And the Congressional Research Service has defined "geospatial information" as "information attached to a location, such as latitude and longitude, or street location." P. Folger, CRS, *Geospatial Information and Geographic Information Systems (GIS): An Overview for Congress* 2 (2011). These definitions confirm the district court's interpretation of "geospatial information" to mean information referring to a specific place, whether or not overlaid on a graphic image.

Farm and tract numbers identify a specific area of farmland in a specific location. They serve as a shorthand reference to individual plots of land. In this respect, they are analogous to a street address or latitude and longitude coordinates. They are therefore "geospatial information" properly withheld under section 8791(b)(2)(B).

Precedent from other circuits aligns with this conclusion. In *Central Platte Natural Resources District v. USDA*, 643 F.3d 1142 (8th Cir. 2011), the Eighth Circuit upheld USDA's refusal to release data from its "Geographic Information System." *Id.* at 1145. The data included "farm number[s]" and "tract number[s]." *Cent. Platte Nat. Res. Dist. v. USDA*, No. 4:09CV3198, 2010 WL 11545694, at *3 (D. Neb. Sept. 8, 2010). The Eighth Circuit took for granted that the data "fell within" section 8791(b)(2)(B). *Cent. Platte*, 643 F.3d at 1148. In addition, the Ninth Circuit has held that "GPS coordinates" are geospatial information under section 8791(b)(2)(B). *Ctr. for Biological Diversity v. USDA*, 626 F.3d 1113, 1115–17 (9th Cir. 2010). Like farm and tract numbers, they identify a specific location on earth but are not part of a graphic image.

8

B

Telematch argues that definitions in two other statutes cut against our conclusion. The first one appears in the Geospatial Data Act of 2018, which defines the term "geospatial data" for purposes of that Act to mean:

> information that is tied to a location on the Earth, including by identifying the geographic location and characteristics of natural or constructed features and boundaries on the Earth, and that is generally represented in vector datasets by points, lines, polygons, or other complex geographic features or phenomena.

43 U.S.C. § 2801(5)(A). The second definition appears in the organic statute for the National Geospatial-Intelligence Agency. It defines the term "geospatial information" for purposes of that statute to mean:

> information that identifies the geographic location and characteristics of natural or constructed features and boundaries on or about the earth and includes—
>
> > (A) data and information derived from, among other things, remote sensing, mapping, and surveying technologies; and
> >
> > (B) mapping, charting, geomatics data, and related products and services.

10 U.S.C. § 467(4).

Telematch does not explain how farm and tract numbers fall outside these definitions. The Geospatial Data Act requires "geospatial data" to be information "tied to a location on the

Earth," which farm and tract numbers clearly are, subject only to further elaboration about how the information is "generally" represented. 43 U.S.C. § 2801(5)(A). Similarly, the definition for the National Geospatial-Intelligence Agency requires that "geospatial information" identify "the geographic location and characteristics of natural or constructed features and boundaries on or about the earth." 10 U.S.C. § 467(4). Farm and tract numbers appear to satisfy this definition as well. They identify the location and boundaries of areas of land, as well as at least one important feature—that it is farmland.

We need not definitively resolve whether farm and tract numbers meet these two statutory definitions. Neither of them applies to section 8791. Moreover, statutory definitions do not necessarily reflect ordinary meaning; they often "giv[e] ordinary words a limited or artificial meaning." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 225 (2012). For instance, a company with fourteen workers would be considered an employer in common parlance but would not meet the statutory definition of "employer" in Title VII of the Civil Rights Act. 42 U.S.C. § 2000e(b). Finally, even if these two definitions have some bearing on the ordinary meaning of the phrase "geospatial information," it is enough to conclude that farm and tract numbers are at least arguably covered by these definitions, as well as clearly covered by many others.

## C

Telematch raises three further arguments why farm and tract numbers are not geospatial information.

First, it relies on a 2008 USDA memorandum stating that "'geospatial information' includes photographs when they contain, or are associated with, other data depicting or identifying attributes of the land, such as common land unit boundaries." Memorandum from B. Rutherford, Assistant

Sec'y for Admin., USDA, to USDA FOIA Officers 1 (July 30, 2008), https://perma.cc/JKK7-ZQ4E. Telematch claims this means that "geospatial information" covers only such photographs. But *include* is "a term of enlargement, and not of limitation." *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (cleaned up). The memorandum explains when a photograph qualifies as geospatial information; it does not suggest that only photographs may so qualify.

Second, Telematch cites a Wikipedia article for the proposition that geospatial information may be divided into vector files, raster files, and geodatabases—all of which involve graphical images. *Geographic Data and Information*, Wikipedia (Jan. 8, 2021, 2:39 PM), https://perma.cc/3L2W-MBD8. Even assuming that this article is a reliable source, Telematch has mischaracterized it. The article says there are "many different types" of geospatial information, "*including* vector files, raster files, geographic databases, web files, and multi-temporal data." *Id.* (emphasis added). And it adopts essentially the Federal Geography Data Committee's definition—"data and information having an implicit or explicit association with a location relative to Earth." *Id.*

Third, Telematch notes that a USDA handbook for state and local officials lists "[i]magery and spatial representations" of farms as a separate category of information from farm and tract numbers. *See* USDA, *Farm Records and Reconstitutions for 2013 and Subsequent Years* pp. 1-5, 1-7 (2013). But the handbook says nothing about which categories of information count as geospatial information. This is unsurprising because its purpose is to help local officials maintain farm records, not to help USDA officials handle FOIA requests. *Id.* at p. 1-1.

11

III

USDA withheld the customer numbers under Exemption 6, which applies if the records at issue are "similar" to "personnel" or "medical" files and if their disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  To determine whether the second condition is met, we first ask "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009) (cleaned up).  If so, we "balance the privacy interest in non-disclosure against the public interest." *Id.*

Customer numbers are "similar files" under Exemption 6. That phrase encompasses files that "contain information about particular individuals." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).  It also includes "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (cleaned up).  Like names, customer numbers correspond to particular farm owners and can be used to ascertain their identities.  They are therefore similar files. *See Multi Ag*, 515 F.3d at 1228–29.

The release of customer numbers would impair a substantial privacy interest.  USDA uses customer numbers in records on land sales, business relationships, crops planted, and the programs in which owners are participating.  As we recognized even in the context of farm and tract numbers, the release of such information would "allow for an inference to be drawn about the financial situation of an individual farmer," which implicates a substantial privacy interest. *Multi Ag*, 515 F.3d at 1230.

We recognize that the requested records do not generally identify which farm owner corresponds to a customer number. But there is nonetheless a "substantial probability" that disclosure will interfere with personal privacy, which is enough to trigger the exemption. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). According to USDA's statement of material facts, which Telematch has not contested, the match between customer numbers and farm owners is already a matter of public record in many cases. USDA used to release customer numbers in FOIA productions before 2018, including in documents connecting these numbers to individual owners. It has also released many such records inadvertently. Moreover, many of them can be obtained through a simple Internet search. Release of further records containing customer numbers thus would allow the public to learn more about the corresponding farm owners.

As for the public interest, Telematch claims that disclosure would aid in monitoring whether USDA is making accurate benefit and subsidy determinations. In *Multi Ag*, we recognized that "the public has a significant interest in being able to look at the information the agency had before it when making these determinations." 515 F.3d at 1231. USDA objects that the public would need customer numbers *and* farm and tract numbers to be able to evaluate its decisions. Yet to establish the privacy interests at stake, USDA asserted that the public *can* link information in the requested records to individual farm owners. If it can do so to learn of farmers' personal finances, it likely can also do so to monitor USDA's program administration.

In *Multi Ag*, we concluded that the threat to farmers' privacy from release of information like customer numbers was not "particularly strong," and so was outweighed by the "significant" public interest in monitoring USDA's decisions.

515 F.3d at 1230–31. However, section 8791 substantially changes our analysis of both sides of the balance.

As to privacy, section 8791 reflects a congressional judgment that farmers *do* have a strong interest in protecting the type of information at issue. It establishes an absolute prohibition on disclosure of information provided by farmers "concerning the agricultural operations, farming or conservation practices" on their land "or the land itself." 7 U.S.C. § 8791(b)(2)(A). The statute plainly reflects privacy rather than other concerns, for it permits disclosure upon a farmer's consent. *Id.* § 8791(b)(4)(C). Release of customer numbers would allow the public to learn much the same information about farmers' land and operations, so farmers must also have a robust privacy interest in those numbers.

As to the public interest, section 8791 permits the release of other information revealing USDA's activities. In weighing the interests at stake, we must ask whether the "*incremental* value" of disclosing customer numbers justifies the harm to farmers' privacy interests. *Am. Immigr. Laws. Ass'n v. EOIR*, 830 F.3d 667, 674 (D.C. Cir. 2016) (emphasis added) (cleaned up). Section 8791 permits release of information about program administration in a "statistical or aggregate form" if no individual farmers are identified. 7 U.S.C. § 8791(b)(4)(B). It further allows release of "payment information" under any USDA program, including "the names and addresses of recipients." *Id.* § 8791(b)(4)(A). In *Multi Ag*, by contrast, USDA offered to release neither statistical aggregates of the requested records nor payment information. Given the lines drawn by section 8791, the incremental value of disclosing customer numbers is now much lower.

Taking both points into account, we conclude that the disclosure of customer numbers would constitute a clearly

unwarranted invasion of personal privacy. A general interest in monitoring benefit and subsidy determinations, without more, cannot overcome the heightened interest we must now show for farmers' privacy interests in information about their land and operations. Here, Telematch has produced no evidence that USDA is doing a poor job of program administration. Nor has it even attempted to explain why the statistical and payment information released by USDA is insufficient to allow public monitoring of the agency's program eligibility determinations.

Along the same lines, Telematch claims that the disclosure of customer numbers would allow the public to monitor whether farmers are fraudulently obtaining benefits from USDA. But Telematch has provided no evidence of any significant fraud. And "an unsupported suggestion that an agency may be distributing federal funds to a fraudulent claimant" cannot by itself justify "disclosure of private information," which would make Exemption 6 a dead letter. *Consumers' Checkbook*, 554 F.3d at 1054.

## IV

USDA permissibly withheld the requested farm, tract, and customer numbers.

*Affirmed.*